**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

SOUTHERN MARSH COLLECTION, LLC          CIVIL ACTION

versus

HUNTERMAN'S LLC          24-cv-301-SDD-RLB

**RULING**

This matter is before the Court on the Rule 12(b)(2) Motion to Dismiss[1] filed by Defendant Hunterman's LLC ("Defendant") for lack of personal jurisdiction. Plaintiff Southern Marsh Collection, LLC ("Southern Marsh") filed an Opposition,[2] to which the Defendant replied.[3]

For the reasons set forth below, Defendant's Motion to Dismiss[4] shall be granted, and Southern Marsh's claims will be dismissed without prejudice.

**I.     FACTS AND PROCEDURAL BACKGROUND**

Southern Marsh originally filed this action in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[5] Southern Marsh filed state law claims against Hunterman's[6] for trademark infringement under La. R.S. § 51:222 (Count One), trademark dilution under La. R.S. § 51:223.1 (Count Two), and unfair trade

---

[1] Rec. Doc. 7.
[2] Rec. Doc. 12.
[3] Rec. Doc. 13.
[4] Rec. Doc. 7.
[5] Rec. Doc. 1-1 at p. 1.
[6] Hunterman is a Virginia LLC whose sole member, Hunter Foster, is domiciled in Virginia. Rec. Doc. 31 at p. 7.

practices under La. R.S. § 51:1409 (Count Three).[7] Southern Marsh – an outdoor apparel company[8] founded in 2007 – alleges it owns a Louisiana Trademark Registration Certificate for its duck-style logo (the "Southern Marsh Logo").[9] Southern Marsh claims it established trademark rights, brand recognition, and consumer goodwill in its Southern Marsh Logo.[10] It claims Hunterman's began marketing, distributing, and selling products in the United States using a mark that closely resembles the Southern Marsh Logo that is likely to cause customer confusion.[11] Like Southern Marsh, Hunterman's sells a variety of outdoor apparel and accessories to a similar class of customers.[12]

Hunterman's operates an interactive website located at www.huntermans.com.[13] Southern Marsh claims Hunterman's interactive website is accessible to consumers located in Louisiana who can view, select, pay for, and order products for delivery into Louisiana.[14] Southern Marsh alleges Hunterman's products offered for sale and delivery to Louisiana residents display a duck logo (the "Infringing Duck Logo") that resembles the Southern Marsh Logo, causing consumer confusion.[15] Southern Marsh alleges consumers are likely to be confused and believe Hunterman's products are affiliated with, sponsored by, approved by, associated with, or licensed by Southern Marsh when they are not.[16] Southern Marsh further claims Hunterman's operates interactive social media

---

[7] Rec. Doc. 1-1 at pp. 10-13.
[8] Southern Marsh is an LLC made up of three members that are made up of trusts, the citizenship of the beneficiaries being Puerto Rico. Rec. Docs. 29 at p. 2, 30 at p. 4, 31 at pp. 7-8.
[9] Rec. 1-1 at p. 4.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 5.
[14] *Id.*
[15] *Id.*
[16] *Id.* at p. 9.

accounts whereby Hunterman's can communicate with Louisiana residents.[17] Southern Marsh seeks compensatory damages, injunctive relief, costs, reasonable attorney fees, and interest.[18]

Defendant removed.[19] Now, the Defendant seeks dismissal for lack of personal jurisdiction over it.[20] Southern Marsh opposes,[21] arguing that Hunterman's is subject to personal jurisdiction in Louisiana due to its contacts with Louisiana.[22] Defendant replied.[23]

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Rule 12(b)(2).

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[24] A plaintiff is not required to establish jurisdiction by a preponderance of the evidence, however; a *prima facie* showing is sufficient.[25] "When considering a motion to dismiss for lack of personal jurisdiction, the Fifth Circuit directs courts to accept plaintiff's allegations as true, other than those which are controverted by the defendant or are simply conclusory statements, and to resolve conflicts between the parties' facts in plaintiff's favor."[26]

---

[17] *Id.* at p. 10.
[18] *Id.* at pp. 15-16.
[19] Rec. Doc. 1.
[20] Rec. Doc. 7.
[21] Rec. Doc. 12.
[22] *Id.* at pp. 5-11.
[23] Rec. Doc. 13.
[24] *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[25] *Id.*
[26] *S. Marsh Collection, LLC v. C.J. Printing, Inc.*, No. 14-495, 2015 WL 331919, at *1 (M.D. La. Jan. 26, 2015) (citing *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001)).

A court may exercise personal jurisdiction over a nonresident-defendant only if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction does not exceed the boundaries of due process.[27] The long-arm statute of Louisiana, the forum state here, authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.[28] A court's exercise of personal jurisdiction over a nonresident-defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.[29]

The first inquiry, into "minimum contacts," is fact intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court there.[30] A party may establish minimum contacts sufficient for the state to assert specific jurisdiction or general jurisdiction.[31]

General jurisdiction exists "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial."[32] Specific jurisdiction exists if a nonresident-defendant has "purposefully

---

[27] *Dykes v. Maverick Motion Picture Grp., LLC*, No. 08–536, 2011 WL 900276, at *2 (M.D. La. Mar. 14, 2011).
[28] *Id.*
[29] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[30] *Luv N' Care Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).
[31] *Alpine View Co. v. Atlas Copco, A.B.*, 205 F.3d 208, 215 (5th Cir. 2000).
[32] *Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 3:16-CV-2509-B, 2017 WL 3023489, at *2 (N.D. Tex. July 14, 2017) (quoting *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999)).

directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[33] That is, for a court to exercise specific jurisdiction (1) the defendant must have directed activities or purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendants forum-related contacts; and (3) the court's exercise of jurisdiction must be fair and reasonable.[34] Merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction.[35] With respect to contacts arising out of the Internet, the Fifth Circuit has summarized the applicable law as follows:

> The exercise of specific personal jurisdiction based on the defendant's contacts with the forum through the Internet requires that the plaintiff satisfy the terms of the appropriate jurisdictional statute, and then show that the exercise of jurisdiction will not violate the Constitution." *Id.* at 332. "This due process analysis has been refined ... into a three-part test that seems fully applicable to jurisdiction questions generated by the new technologies: (1) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (2) Did the defendant purposely direct its activities toward the forum state or purposely avail itself of the privilege of conducting activities therein? (3) Would the exercise of personal jurisdiction over the defendant be reasonable and fair?[36]

### B.    The Court lacks personal jurisdiction over Hunterman's.

Hunterman's seek dismissal for lack of personal jurisdiction.[37] Hunterman's argues the Court lacks general jurisdiction as it is a Virginia, not Louisiana, resident.[38] Hunterman's further contends the Court lacks specific jurisdiction as it has not

---

[33] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[34] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[35] *Burger King*, 471 U.S. at 478.
[36] *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012).
[37] Rec. Doc. 7 at p. 1.
[38] Rec. Doc. 7-1 at pp. 3-4.

purposefully availed itself of the benefits of doing business in Louisiana.[39] In support, Hunterman's submits the Declaration of Hunter Foster ("Foster"), the sole member of Hunterman's and creator of its logo.[40] Over the course of its three years in business, Hunterman's has made 402 online orders, only one of which has been to a Louisiana resident.[41] That sale occurred on May 26, 2023, and totaled $57.00.[42] The bulk of Hunterman's sales have been to residents of Virginia, North Carolina, South Carolina, Florida, and Alabama.[43] Hunterman's argues the sale is an "isolated act that does not create minimum contacts."[44] Thus, Hunterman's asserts its business presence in Louisiana is inadequate for Louisiana courts to exercise specific personal jurisdiction over it.[45]

Southern Marsh does not attempt to argue that Hunterman's is subject to the Court's general jurisdiction.[46] Thus, the only issue before the Court is whether the Court has specific jurisdiction over nonresident Hunterman's. Southern Marsh bears that burden.[47]

Southern Marsh argues Hunterman's subjects itself to personal jurisdiction in Louisiana because it markets and sells outdoor apparel and accessories showing a confusingly similar duck logo "through its interactive website whereby infringing products can be – *and in at least once[sic] instance have been* – ordered, sold, and shipped directly

---

[39] *Id.* at p. 5.
[40] Rec. Doc. 7-2.
[41] Rec. Docs. 7-1 at p. 5, 7-2 at p. 2.
[42] Rec. Doc. 7-2 at p. 2.
[43] *Id.*
[44] Rec. Doc. 13 at pp. 2-3.
[45] Rec. Doc. 7-1 at p. 5.
[46] Rec. Doc. 12.
[47] *Dykes*, 2011 WL 900276, at *2.

into Louisiana."[48] Southern Marsh further contends Hunterman's operates Facebook, Instagram, and TikTok accounts whereby infringing products are marketed and advertised to Louisiana residents.[49] It contends that Hunterman's purposefully availed itself of the privilege of doing business in Louisiana by selling and shipping at least one product into the state.[50] Southern Marsh asserts Hunterman's "knowingly benefit[ed]" from the Louisiana market with that sale, so "it is only fitting that [it] be amenable to suit" in Louisiana.[51] Thus, Southern Marsh contends Hunterman's has minimum contacts with Louisiana.[52]

Southern Marsh argues the facts here are distinguishable from prior Southern Marsh cases cited by Hunterman's because, here, it is undisputed[53] that Hunterman's sold at least one product to an individual in Louisiana directly from its website.[54] And Southern Marsh further argues its claims arise out of Hunterman's contacts with Louisiana – namely through its marketing, advertising, and offering of its products for sale to Louisiana residents on its website and social media accounts.[55] Thus, Southern Marsh contends the motion should be denied. Alternatively, Southern Marsh seeks leave to take jurisdictional discovery and to amend or supplement its Response after discovery.[56]

The Court observes, as it has before in similar cases, that the existence of an interactive website without proof of actual sales in the forum state does not automatically

---

[48] Rec. Doc. 12 at p. 2 (emphasis in original).
[49] Rec. Doc. 12 at p. 2.
[50] Rec. Doc. 12 at p. 7.
[51] *Id.* (citing *Luv N'care, Ltd. v. Insta-Mix, Inc.* 438 F.3d 465, 470 (5th Cir. 2006)).
[52] *Id.*
[53] Rec. Docs. 7-1 at p. 5, 12 at pp. 6-7.
[54] Rec. Doc. 12 at p. 8.
[55] *Id.* at p. 9.
[56] *Id.* at p. 11.

confer jurisdiction, because "[u]nder *Zippo*, personal jurisdiction is based on *actual* internet sales to forum residents, not the mere possibility of sales.[57] Further, courts have held that operating a website where a resident of the forum state might purchase something, without evidence of specific targeting, is not sufficient for specific jurisdiction.[58]

In *Admar*, the defendants ran an interactive website that was accessible in all 50 states, including the forum state of Louisiana.[59] However, there was no evidence that the defendant targeted Louisiana, so the court declined to exercise personal jurisdiction over the defendant.[60] The court held that "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there."[61] To establish minimum contacts, the defendant must also purposefully avail itself of doing business in the state either through sales of products into the forum or advertising targeted at the forum.[62] The defendants in *Admar* did not directly sell any products into the forum nor was there evidence of solicitation of business in the forum.[63] Further, the Fifth Circuit has rejected similar arguments as made here, noting that a defendant's "delivery of a single

---

[57] *Springboards to Educ., Inc. v. Hamilton Cty. Read 20*, No. 3:16-CV-2509-B, 2017 WL 3023489, at *4 (N.D. Tex. July 14, 2017) (emphasis in original).
[58] *Tafaro v. Innovative Discovery, LLC*, 89 F. Supp. 3d 867, 874 (E.D. La. 2015) ("Mere foreseeability of the injury in the forum state is not enough to support a finding of personal jurisdiction absent some showing of defendant's targeting of the forum") (citing *See Calder v. Jones*, 465 U.S. 783, 788–789 (1984)). *See also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).
[59] *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786-87 (5th Cir. 2021)
[60] *Id.* at 787.
[61] *Id.* (finding no personal jurisdiction where the defendant had not sold a single infringing product to a Louisiana resident, and it had not solicited business in Louisiana through targeted advertising).
[62] *Id.*
[63] *Id.* at 787-88.

$13 product to Louisiana is the type of isolated act that does not create minimum contacts."[64]

As in *Admar*, Hunterman's website is interactive in that products can be ordered through it.[65] Also, like *Admar*, the website is accessible in multiple states and presumably throughout the United States.[66] However, unlike *Admar*, Hunterman's has directly sold a product into the forum.[67] Nonetheless, "a corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process."[68]

In its three years of operation, Hunterman's has made 402 sales totaling $17,882.[69] Only one sale has been made to an individual in Louisiana.[70] That sale was worth $57.00.[71] Southern Marsh alleges that the single sale is a "more extensive" contact with Louisiana because it was a direct-to-consumer sale rather than a sale through a distributor.[72] Southern Marsh contends that, like the defendant in *Luv N'care*,[73] Hunterman's knew where the product would end up.[74] But such an isolated occurrence does not satisfy the requirements for minimum contacts with Louisiana.[75]

---

[64] *Admar*, 18 F.4th at 788 n.1 (citing *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228 (5th Cir. 2012) ("A corporation's sales to forum residents must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirement of due process.").
[65] Rec. Doc. 7-1 at p. 1.
[66] Hunterman's top five sales by state are to residents of Virginia, North Carolina, South Carolina, Florida, and Alabama. Rec. Doc. 7-2 at p. 2.
[67] Rec. Doc. 7-2 at p. 2.
[68] *Pervasive Software*, 688 F.3d at 228.
[69] Rec. Doc. 7-2 at p. 2.
[70] *Id.*
[71] *Id.*
[72] Rec. Doc. 12 at p. 7.
[73] *Luv N'care Ltd. v. Insta-Mix*, 438 F.3d 465, 468 (5th Cir. 2006).
[74] Rec. Doc. 12 at p. 7.
[75] *Pervasive Software*, 688 F.3d at 228.

The parties agree that Hunterman's has an interactive website and social media pages where it *can* interact with Louisiana residents.[76] However, Southern Marsh points to no facts where Hunterman's has actually targeted Louisiana residents with its website or social media sites.[77] Southern Marsh's allegation that Hunterman's has interacted with Louisiana residents through its website and social media pages is merely conclusory.[78] "Website interactivity is important only insofar as it reflects . . . purposeful targeting of residents of the forum state."[79] Just because a website is accessible in a forum does not mean the defendant has sufficient minimum contacts with the forum.[80]

This Court granted two other similar motions to dismiss involving Southern Marsh and specific personal jurisdiction. In *Southern Marsh Collection LLC, v. C.J. Printing, Inc.*, Southern Marsh argued that C.J. Printing shipped three products into the forum of Louisiana, establishing minimum contacts.[81] The Court found that specific personal jurisdiction did not exist when the Defendant shipped three disputed products into the State of Louisiana and the defendant's website did not offer direct ordering and had no live chat feature. There – as is also the case here – there was no showing that the defendant directed advertising or solicited the forum state or that the actual purchases resulted from targeted marketing occurred in the forum state.

In *Southern Marsh Collection, LLC v. Cocklebur Creek Company, LLC*,[82] Southern Marsh alleged that an interactive website that could be accessed in the forum and retail

---

[76] Rec. Docs. 12 at p. 4, 13 at p. 2.
[77] Rec. Docs. 12 at pp. 6-8, 13 at p. 2.
[78] *See Panda Brandywine*, 253 F.3d at 868.
[79] *Admar*, 18 F.4th at 787 (quoting *Pervasive Software*, 688 F.3d at 228).
[80] *Admar*, 18 F.4th at 787.
[81] 2015 WL 331919, at *4 (M.D. La. Jan. 26, 2015).
[82] 2022 WL 817336 (M.D. La. Mar. 16, 2022).

shelf space in the forum constituted purposeful availment.[83] However, the Court declined to exercise personal jurisdiction over the defendant, holding that "operating a website where a resident of the forum state might purchase something, without evidence of specific targeting, is not sufficient for specific jurisdiction."[84]

Here, Hunterman's single online sale to a Louisiana resident is insufficient for this Court to exercise specific personal jurisdiction over it. Hunterman's does have an interactive website and social media sites that can be used to interact with Louisiana residents, but there is no evidence they have been used to do so or actually targeted at the forum. Southern Marsh fails to establish any other contacts with the State of Louisiana. Southern Marsh also fails to show Hunterman's directed advertising to Louisiana or purposefully availed itself of the benefits of Louisiana. Thus, Southern Marsh fails to establish specific jurisdiction over Hunterman's. Hunterman's motion shall be granted.

In its Opposition, Southern Marsh requested jurisdictional discovery and an opportunity to amend its Complaint. "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact."[85] "But a party seeking jurisdictional discovery cannot escape their burden of demonstrating a *prima facie* case for personal jurisdiction."[86] A court does not abuse its discretion to deny jurisdictional discovery where the plaintiff has "not made even a preliminary showing of

---

[83] *Id.* at *3-4.
[84] *Id.*
[85] *Chem. Carriers, L.L.C. v. Energy Int'l, L.L.C.*, No. 19-436-SDD-SDJ, 2020 WL 5733193, at *2 (M.D. La. Sept. 24, 2020) (quoting *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)).
[86] *Chem. Carriers*, 2020 WL 5733193, at *2.

jurisdiction."[87] Here, Southern Marsh fails to establish a *prima facie* case of personal jurisdiction. Thus, its request for jurisdictional discovery is denied. However, Southern Marsh may seek to establish a *prima facie* case for personal jurisdiction in an Amended Complaint, if any, within thirty (30) days of this Ruling.

### III. CONCLUSION

Accordingly,

Hunterman's Motion to Dismiss[88] is hereby GRANTED, and Southern Marsh's claims are DISMISSED WITHOUT PREJUDICE. Southern Marsh is hereby granted leave to file an Amended Complaint within 30 days of this Ruling.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  28th  day of February, 2025.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[87] *Fielding v. Hubert Burdia Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).
[88] Rec. Doc. 7.